■ STATE OF NEW YORK, Respondent, v GENERAL MOTORS CORPORATION, Appellant.—Order, Supreme Court, New York County, entered on January 13, 1978, as resettled by order entered on February 28, 1978, affirmed for the reasons stated by Hughes, J., at Special Term. Respondent shall recover of appellant $60 costs and disbursements of this appeal. Concur—Kupferman, J. P., Birns, Evans and Sandler, JJ.; Silverman, J., dissents in the following memorandum: I would reverse the judgment appealed from, on the law, and remand the matter for an evidentiary hearing on the issues of fact, except as to the claim with respect to the Cadillac Seville as to which I would dismiss the proceeding. I see no objection, with respect to a complex product such as an automobile, to the manufacturer of a particular brand name automobile having parts of it manufactured elsewhere than in its own factories. I see no objection to subcontracting the manufacture of parts or all of the product. Nor do I see any objection to having parts of engines for use say in a Buick car manufactured in some other division of General Motors—Oldsmobile or Pontiac—provided that the engine thus produced is the engine intended for that automobile. But of course General Motors has no right to mislead the public or to foster any mistaken belief on the part of the public as to the origin of any of its engines. On this question I think there are triable issues of fact, i.e., whether with respect to the particular models of Buicks, Oldsmobiles and Pontiacs here involved, General Motors by its advertising and its public statements led the public to believe, or fostered the belief in the public, that the engines in those models were either unique to those models or those brands, or were manufactured only

in the particular respective division of General Motors, i.e., Buick, Oldsmobile or Pontiac, or that such engines were designed only by such division or for use only in such models or brands and whether in fact such belief and representation were false. For the purposes of this proceeding brought by the Attorney-General under subdivision 12 of section 63 of the Executive Law essentially on behalf of affected residents of New York State generally, I do not think that it is particularly material whether any particular customers did or did not have this belief. Rather the question is whether on a fair consideration of General Motor's publicity that was the impression conveyed or fostered. While this involves an examination of the meaning and probable effect of publicity much of which is in written form, I think that still presents a question of fact even if it be one to be decided largely on the basis of documentary evidence. With respect to Cadillac Seville, the only representation appears to be that that car is the first American production car to offer the particularly described engine as standard equipment; and so far as the record indicates, that statement is true. Its truth, in my view, is in no way impaired by the fact that the "block assembly" of the Cadillac Seville was made by the Oldsmobile division, as the remainder of the engine, comprised of all its distinctive features, is either installed by Oldsmobile pursuant to Cadillac design and engineering, or is added by Cadillac, and Cadillac finally tests and installs the engine in the completed car. The present case does not involve the use of Chevrolet engines in other brands of General Motors cars.